**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America. <br> Plaintiff, <br> v. <br> George Calvin Windley, <br> Defendant. | No. CR-10-660-2-PHX-DGC <br><br> **ORDER** |

Defendant George Calvin Windley has filed a motion to withdraw his guilty plea. Doc. 329. The government has filed a response. Doc. 351. Defendant has not filed a reply, and no party has requested oral argument. For the reasons that follow, the Court will deny Defendant's motion.

**I.    Background and Legal Standard.**

Defendant asserts several grounds for withdrawing his plea. First, Defendant asserts that he was coerced by defense counsel into signing the plea agreement. He notes that he stated before the plea colloquy on July 11, 2012, that he felt he had no choice but to accept the plea agreement. Second, Defendant suggests that he was not adequately represented at his change of plea hearing because his counsel said he would prefer not to represent Defendant. Third, Defendant asserts that he was unable to understand matters at the change of plea hearing because he was on psychiatric medications. Fourth, Defendant asserts that he did not understand enhancements that will be applied to his sentence, including several specific guideline sections and a firearm enhancement. Fifth, Defendant asserts that little time passed between his change of plea hearing and his

motion to withdraw from the plea, and the government will not be prejudiced if the guilty plea is withdrawn. Doc. 329.[1]

The Court accepted Defendant's guilty plea at a change of plea hearing on July 11, 2012. Because the guilty plea has been accepted, it may be withdrawn only if "the Defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Defendant has the burden of demonstrating a fair and just reason, but the standard is to be applied liberally. *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005). "'Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, *or any other reason for withdrawing the plea that did not exist when the defendant entered his plea.*'" *Id*. (quoting *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004)) (emphasis in *Davis*).

**II. Analysis.**

**A. Coercion by Counsel.**

Defendant contends that he was coerced by his defense counsel to plead guilty. Based on its close familiarity with this case, and its direct involvement in the several-hour hearing during which Defendant actually changed his plea, the Court does not agree.

The long and difficult history of this case is set forth in three previous orders entered by the Court. *See* Docs. 321, 330, 352. The Court will not recount the contents of those orders here. The Court does note, however, that Defendant refused to cooperate with three successive court-appointed lawyers. When the Court appointed Defendant's third attorney, it warned Defendant that a fourth attorney would not be appointed. Despite this warning, Defendant did not cooperate with his third attorney and ultimately forced the lawyer's withdrawal by filing a formal complaint with the State Bar of Arizona. Defendant did so despite his third attorney's diligent representation of him in this case, and now finds himself self-represented. *Id.*

---

[1] Because some of Defendant's arguments are repetitive and overlapping, the Court has renumbered them for purposes of this order. *See* Doc. 329.

The Court cannot conclude that Defendant was coerced to enter his guilty plea by his third attorney or by the circumstances that occurred at the hearing on July 11, 2012. Prior to that date, Defendant repeatedly changed his mind about whether to accept the government's plea offer.

Defendant announced early in this case that he had no intention of entering a plea agreement and wished to proceed to trial. Doc. 66. At a hearing on March 14, 2012, however, Defendant said he would accept the government's plea offer. Doc. 259. Defendant subsequently refused to sign the plea agreement. Doc. 262. At a settlement conference on May 3, 2012, scheduled at defense counsel's request, a probation officer provided Defendant with a guideline calculation based on charges contained in the Superseding Indictment. Doc. 290. If convicted on all charges, the probation officer calculated that Defendant would face an offense level of 42 and a sentencing range of 30 years to life.

Plea negotiations continued for several weeks after the settlement conference. On June 11, 2012, the government filed a notice advising the Court that plea negotiations had failed and Defendant had rejected a plea offer of 8 to 15 years in prison. Doc. 300. As a result, the Court set a hearing on all outstanding defense motions for June 29, 2012. Doc. 302. At the hearing, the government stated that its plea offer would remain open for five more days. Defense counsel stated, nonetheless, that Defendant would not accept the offer. Doc. 303.

Within days of the hearing, defense counsel called the Court to say that Defendant had changed his mind and wanted to enter the plea agreement. A change of plea hearing accordingly was scheduled for July 11, 2012. Doc. 305. When the parties appeared for the hearing, however, Defendant said he would not proceed with the change of plea. He instead announced, as he had in the past, that he wanted a new lawyer.[2] During resulting *ex parte* communications with the Court, Defendant said that his attorney, Marc Victor,

---

[2] Defendant had requested a fourth lawyer on previous occasions. *See, e.g.,* Doc. 258.

was pressuring him to accept the plea offer. The Court previously had engaged in lengthy *ex parte* communications with Defendant and Attorney Victor at the hearing on June 29, 2012. Doc. 303. The Court concluded on the basis of that hearing, and after careful questioning during the July 11, 2012, *ex parte* discussion, that Attorney Victor was providing Defendant with an accurate assessment of his chances at trial, had negotiated a favorable plea agreement, was not applying inappropriate pressure to accept the plea, was representing Defendant diligently, and would be prepared for trial if Defendant chose to reject the plea offer. The Court further found that Defendant was unhappy that Attorney Victor had candidly advised that he likely would lose at trial given the witnesses prepared to testify against him, including several of the young women victims and several of his co-defendants who already had plead guilty. Defendant was also unhappy with the substantial sentencing range he faced if convicted and with the 8 to 15 year plea the government was offering. Although the Court understood why Defendant would be frustrated with these facts, the Court found that Attorney Victor was representing him effectively and was providing candid and accurate legal advice.

The Court reminded Defendant of its previous statement in December of 2011 that Defendant would not be appointed a fourth lawyer. In response, Defendant asked to represent himself at trial as he had on several previous occasions. *See, e.g.,* Docs. 66, 303. The Court accordingly gave Defendant the warnings required by *Faretta v. California*, 422 U.S. 806 (1975), and cautioned Defendant that it would be a very poor idea to represent himself. In response to these warnings, Defendant withdrew his request to represent himself and stated that he wished to go forward with the change of plea, represented by Attorney Victor. The Court concluded that this decision was not based on coercion, but on the reality of the disadvantages Defendant would face if he insisted on Attorney Victor's withdrawal and sought to represent himself at trial – facts that *Faretta* specifically requires the Court to communicate to Defendant. Moreover, Defendant's decision to accept the plea agreement was not precipitous or surprising. It was at least the third time Defendant decided to accept the government's plea offer.

Upon Defendant's statement that he wanted to proceed with a guilty plea represented by Mr. Victor, the Court suggested that Defendant take one final opportunity to review the plea agreement with counsel even though he had done so on several previous occasions. Defendant agreed, the hearing was adjourned, and Defendant conferred again with counsel and reviewed the plea agreement. Once this process had been completed, the Court returned to the courtroom and conducted a detailed change of plea hearing. At the conclusion of a lengthy and detailed Rule 11 colloquy, the Court found that Defendant fully understood the terms of his plea agreement, that his decision to accept the plea agreement and plead guilty was knowing and voluntary, and that his guilty plea was supported by a factual basis. The Court accordingly accepted the plea.

Given this history, the Court cannot accept Defendant's assertion that his guilty plea was coerced. Defendant accepted the plea agreement on March 14, again after the May settlement conference and lengthy plea negotiations, and again at the July 11 hearing after an extended *ex parte* communication with the Court. Defense counsel stated at the July 11 hearing that Defendant had reviewed the plea agreement on numerous occasions over the course of several months. Defendant was afforded an additional opportunity to review the agreement with counsel before entering his plea on July 11. Defendant's decision to proceed with the plea on July 11 was made after the Court advised him of the difficulties he would face if he terminated his counsel and proceeded to trial representing himself – difficulties the Supreme Court requires criminal defendants to understand before electing to represent themselves. *Faretta*, 422 U.S. 806. Deciding to plead guilty in light of a likely conviction and a lengthy sentence is not coercion; it is a fully-informed decision.

Defendant has prolonged this case for many months by refusing to cooperate with counsel and by his on-again, off-again position regarding the plea agreement. Defendant appears to be continuing that stalling tactic in the motion to withdraw his plea. Knowing that he faces a sentence on conviction of 30 years to life, Defendant appears to have little concern about prolonging the prosecution of his case. He now wishes to withdraw his

guilty plea, appeal once again for the appointment of counsel (which will not occur), and in theory proceed to trial. The Court has had direct discussions with Defendant concerning the disadvantages of representing himself at trial, and knows first-hand that Defendant does not want to do so. Defendant has received advice from three different attorneys. He has been given a settlement conference where a probation officer discussed in detail the likely sentencing outcome if he were convicted at trial. He has had several lengthy *ex parte* communications with the Court and his counsel. Three times he has decided to accept the guilty plea, and at least three times he has changed his mind. This is not a matter of coercion. This is a matter of indecision and tactical delay. Defendant's guilty plea has not been coerced.

### B.  Inadequate Representation by Counsel.

Defendant argues that Attorney Victor provided inadequate representation in connection with the guilty plea. This too is patently incorrect. As noted, the Court has had several lengthy *ex parte* communications with Defendant and Attorney Victor concerning the nature of Mr. Victor's representation. The Court is persuaded that Mr. Victor provided Defendant candid and accurate legal advice.

The Court also notes that the evidence against Defendant is substantial. He is accused of coercing young women into prostitution, and several of them are prepared to testify at trial. His co-defendants have pled guilty to similar charges and also will testify against Defendant. Conviction on all counts at trial will result in a sentencing range of 30 years to life. The plea agreement, which caps Defendant's exposure at 15 years, is clearly favorable. Defendant was not given inaccurate advice when he was told by Attorney Victor that the plea agreement was favorable.

Although it is true that Defendant had a stormy relationship with Mr. Victor, as he had with his previous counsel, the Court was persuaded after several lengthy *ex parte* hearings that Mr. Victor was representing Defendant well. And although it also is true that Attorney Victor stated at the July 11, 2012 hearing that he would prefer to terminate his representation of Defendant given the difficulty of the relationship, Mr. Victor also

stated that he was willing to proceed with the representation and to provide Defendant with accurate advice and a zealous defense. The Court concluded that Attorney Victor was capable of doing so, and therefore granted Defendant's request to go forward with the plea colloquy represented by Attorney Victor.

Given these facts, the Court cannot conclude that Defendant has been inadequately represented in this case or was inadequately represented at his change of plea hearing.

### C. Defendant's Medications.

The Court has had an unusually large number of hearings with Defendant. Several of these hearings have included detailed *ex parte* communications, during which Defendant has been animated and emphatic in his communications with the Court. The Court has come to know Defendant and to understand his substantial mental abilities.

During the plea colloquy on July 11, 2012, Defendant stated that he was taking medication prescribed by a psychologist. The Court therefore engaged in this dialogue:

> THE COURT: Okay. Does that medication affect your ability to understand what we're doing here today?
>
> DEFENDANT: I'm not sure, Your Honor. It's a psych med. It prevents me from overly thinking. Slow down my thinking process, I guess. Stress.
>
> THE COURT: Do you feel that this medication has impaired your ability to understand conversations or to understand what we've been talking about in the court for the last couple of hours here today?
>
> DEFENDANT: I personally wouldn't know the effects that would be taken, no. I wouldn't be able to tell you that, but it's supposed to affect my thinking ability, but I don't see how – I don't – I wouldn't be able to know if it's doing anything.
>
> THE COURT: Okay. Are you aware –
>
> DEFENDANT: I'm aware what's going on.

| | | |
|---|---|---|
| THE COURT: | | All right. Are you aware of any impairment you have in understanding what we're doing as a result of the medication? |
| DEFENDANT: | | No, I'm not aware of any. |
| THE COURT: | | Mr. Victor, does it appear to you Mr. Windley understands what we're doing here today? |
| MR. VICTOR: | | It does, Judge, and I also can say I spent some time with Mr. Windley earlier today, some extensive time, having conversation. I wasn't aware of any issue whatsoever. |
| | | I've been dealing with Mr. Windley for quite some time. I haven't noticed any difference between the way Mr. Windley interacts during conversations with me today with how he's interacted with me since the beginning before he was on psych meds. |

Doc. 350 at 7-8.

In response to further questioning, Defendant said he was not using any other medications and was not receiving any other treatments. *Id*. at 8-9. Both counsel for the government and Defendant indicated they believed Defendant was competent to proceed with a change of plea. *Id.* at 9. Furthermore, the Court found Defendant to be as lucid and coherent as he had been in any of the many hearings held in this case over the past two years. Defendant provided no reason for the Court to conclude that he was impaired in any way by the medications he was taking on July 11, 2012. Defendant participated actively and intelligently in the plea colloquy. During discussion of the plea agreement and his guilty plea, he asked questions, raised concerns, and identified uncertainties. When he understood matters and was willing to accept them, he clearly said so. At the close of the colloquy, the Court asked if Defendant understood the things that had been covered during the plea colloquy. He responded "Yes, Your Honor." *Id*. at 44. The Court concludes that Defendant was not mentally impaired in any way at the change of plea hearing.

### D. Potential Sentencing Enhancements.

Defendant asserts that he did not fully understand enhancements that might be applied during his sentencing. Defendant cites Sentencing Guideline §§ 1B1.11, 2A3.1(a)(2), and 3B1.1(c), as well as "a firearm enhancement." None of these enhancements, however, is mentioned in Defendant's plea agreement. *See* Doc. 307. Section 1B1.11 concerns the particular guideline manual that will be applied. Defendant does not explain how this section may affect his sentencing or why he did not understand it when he pled guilty. Guideline § 2A3.1(a)(2) establishes a base offense level for criminal sexual abuse of 30. At the settlement conference, the probation officer explained to Defendant that his offense level, if convicted, would be 42. Moreover, Defendant's plea agreement caps his sentence at 15 years. Defendant has provided no basis for the Court to conclude that he will be unfairly disadvantaged by any application of § 2A3.1(a)(2), if it applies at sentencing, nor any basis for the Court to conclude that Defendant did not understand the stipulated sentencing range in his plea agreement. Guideline § 3B1.1(c) calls for an aggravating role if Defendant was an organizer, leader, manager, or supervisor of the criminal activity. The Court fully expects that Attorney Victor discussed this guideline section with Defendant. More importantly, Defendant understands that the government has viewed him as the primary leader of the prostitution ring from the beginning. Moreover, Defendant does not explain how he will be unfairly disadvantaged by application of this guideline section, particularly when the plea agreement caps his sentence at 15 years. Defendant clearly acknowledged during the change of plea hearing that he understood the Court could impose a sentence as high as 15 years under the stipulated sentencing range. Finally, Defendant says nothing about a firearm enhancement or how it may be applied in this case. Again, the plea agreement caps Defendant's sentence. The Court cannot conclude that ignorance of a possible firearm enhancement somehow caused him to underestimate the level of sentence he might receive under the plea agreement.

### E. Lack of Delay and Prejudice.

Defendant suggests that the Court should permit him to withdraw from his guilty plea because he did not delay substantially before requesting withdrawal. Defendant's guilty plea was entered on July 11, 2012, and he filed his motion to withdraw on September 4, 2012. The fact that Defendant acted within six weeks does not persuade the Court, however, that he has a fair and just reason for seeking the withdrawal. As noted, Defendant has been contemplating a guilty plea for months. He stated on March 14, 2012 that he would accept the government's plea offer.

The Court concludes that the government would be prejudiced if Defendant were allowed to withdraw his guilty plea. In the Court's view, counsel for the government has been very patient in continuing plea negotiations through Defendant's on-again, off-again approach to negotiations. The government set a firm deadline of July 3, 2012 for acceptance of the plea offer, and then permitted Defendant to accept the offer after that deadline. The government no doubt has stopped preparing for trial. If Defendant were permitted to withdraw from his plea agreement after dragging this case out for more than two years through changes of counsel and his consistently changing attitude toward pleading guilty, the government would be forced to go to trial with evidence that has grown at least somewhat stale as a result of Defendant's delays.

Courts have recognized that Defendants should not be permitted to withdraw from guilty pleas when the withdrawals would result in inconvenience to the Court and a waste of judicial resources. *See United States v. McKnight*, 570 F.3d 641, 645 (5th Cir. 2009) (inconvenience to court, waste of judicial resources); *United States v. Thompson-Riviere*, 561 F.3d 345, 348 (4th Cir. 2009) (inconvenience to court, waste of judicial resources). The Court, defense counsel, and counsel for the government have invested an inordinate amount of time in this case due to Defendant's changes of counsel and changes of mind. If the Court were to permit Defendant to withdraw his guilty plea, the process would start over. The Court has absolutely no confidence that Defendant would actually proceed to trial representing himself.

There comes a point where a Defendant's intransigence and maneuvering threaten to make a mockery of the criminal justice system. Defendant has reached that point. He has received multiple attorneys, multiples opportunities to accept the government's plea offer or proceed to trial, and multiple, detailed conferences with the Court concerning his case. He received a thorough and careful plea colloquy on July 11, 2012. Defendant has not presented fair and just reasons to withdraw his guilty plea, nor has he presented reasons for withdrawal that did not exist when he entered his plea. *Davis*, 428 F.3d at 805. His motion will therefore be denied.

**IT IS ORDERED** that Defendant's motion to withdraw his guilty plea (Doc. 329) is **denied**.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 9/4/2012.

Dated this 9th day of November, 2012.

David G. Campbell
United States District Judge